RECORD NO. 09-5116

In The

# United States Court of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## SASAN GHAZAL,

*Defendant – Appellant*.

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

———————

### REPLY BRIEF OF APPELLANT

———————

**Claire J. Rauscher, Executive Director**
**Federal Defenders of**
**Western North Carolina, Inc.**

**\*Ann Loraine Hester**
**Rahwa Gebre-Egziabher**
**FEDERAL DEFENDERS OF**
  **WESTERN NORTH CAROLINA, INC.**
**129 West Trade Street, Suite 300**
**Charlotte, North Carolina  28202**
**(704) 374-0720**

*Counsel for Appellant*
*\*Counsel of Record*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      I.     The Government Overlooks *Rodriquez*'s Holding That The
           Severity Of An Offense Depends On The Defendant's Criminal
           History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      II.    The Government Misinterprets North Carolina Law . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**CASES**</u>

*Johnson v. United States*,
    130 S. Ct. 1265 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Blackwood*,
    No. 09-4762, 2010 WL 707682 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Brandon*,
    No. 09-4639, 2010 WL 1734973 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . 6

*United States v. Harp*,
    406 F.3d 242 (4th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Hill*,
    539 F.3d 1213 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Jones*,
    195 F.3d 205 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Lemons*, (4th Cir.), *cert. denied*,
    129 S. Ct. 238 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. McManus*,
    236 F. App'x 855 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Norris*,
    319 F.3d 1278 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Peebles*,
    No. 08-4900, 2010 WL 1006721
    (4th Cir. Mar. 19, 2010) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Polk*,
 281 Fed. Appx. 195 (4th Cir.),
 *cert. denied*, 129 S. Ct. 476 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*United States v. Pruitt*,
 545 F.3d 416 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*United States v. Rodriquez*,
 553 U.S. 377 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Simmons*,
 340 F. App'x 141, 144 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*United States v. Summers*,
 361 F. App'x 539 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13

*United States v. Taste*,
 303 F. App'x 149 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Taylor*,
 301 F. App'x 248 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Watson*,
 336 F. App'x 363 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 13

*United States v. Williams*,
 326 F.3d 535 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Williams*,
 353 F. App'x 839, 841 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

## **STATUTES**

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 924(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 924(e)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 924(e)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fla. Stat. § 784.03(1)(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

K.S.A. § 21-4704(d)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

N.C. Gen. Stat. § 15A-1340.17(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 12

N.C. Gen. Stat. § 15A-1340.17(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

N.C. Gen. Stat. § 90-95(a)(3)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## **GUIDELINE**

U.S.S.G. § 2K2.1(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

## **INTRODUCTION**

The government's response begs the central question in this case:  how can this Court's rule that *every* defendant's prior North Carolina offense is punishable by the sentence applicable to a defendant *with the worst possible criminal history* survive the Supreme Court's reasoning in *United States v. Rodriquez*, 553 U.S. 377 (2008)?  The government's argument offers no explanation, because no such explanation is possible.

As the result of Ghazal's minimal criminal history, the *statutory* maximum sentence for Ghazal's prior North Carolina drug crime—even if aggravating circumstances applied, which they did not—was 10 months' imprisonment. Op. Br. 8-9. Under *Rodriquez*—and contrary to *United States v. Harp*, 406 F.3d 242 (4th Cir. 2005), and *United States v. Jones*, 195 F.3d 205 (4th Cir. 1999)—Ghazal's criminal history was *part of* his state crime. Op. Br. 16-17. Thus, the maximum punishment for Ghazal's "crime," for purposes of US.S.G. § 2K2.1(a)(4)(B), was at most the 10-month maximum set by North Carolina's "applicable" statutory provision. *Rodriquez*, 553 U.S. at 393.

The government nevertheless asserts that Ghazal's crime was "punishable" by 15 months' imprisonment, because a defendant with the worst possible criminal history could have received a 15-month sentence if convicted of committing a Class I felony as Ghazal was. U.S. Br. 8.  That assertion, though supported by

*Harp* and *Jones*, is incorrect. First, with respect to federal law, the government overlooks Supreme Court precedent—including *Rodriquez* and *Johnson v. United States*, 130 S. Ct. 1265 (2010)—establishing that a defendant's criminal history is part of his crime. Second, with respect to North Carolina law, although it does not attempt to argue that North Carolina's sentencing law is a guideline system, the government refuses to acknowledge that by statute, *no one* with Ghazal's criminal history could receive a sentence greater than 10 months' imprisonment. Accordingly, for the reasons stated below and in his Opening Brief, Ghazal's sentence should be vacated.

## **ARGUMENT**

### I. **The Government Overlooks *Rodriquez*'s Holding That The Severity Of An Offense Depends On The Defendant's Criminal History**

The government's core claim is that the maximum sentence for a North Carolina "crime" is "the sentence that a defendant with the worst possible criminal record could have received for committing that crime." U.S. Br. 10. That claim, in turn, relies on the notion—endorsed in *Harp* and *Jones*—that a "'crime'" does not encompass the circumstances of "the 'individual'" who committed it. U.S. Br. 8 (quoting *Jones*, 195 F.3d at 207). *Rodriquez*, however, resoundingly rejected that distinction between crime and criminal. The government's contrary view of *Rodriquez* relies primarily on unpublished cases that address neither the Supreme

2

Court's reasoning in *Rodriquez* nor the way that North Carolina's sentencing laws function as a series of recidivist provisions. In contrast, Ghazal's interpretation finds support in the Supreme Court's recent decision in *Johnson* and in this Court's decisions in *United States v. Williams*, 326 F.3d 535 (4th Cir. 2003), and *United States v. Peebles*, No. 08-4900, 2010 WL 1006721 (4th Cir. Mar. 19, 2010) (unpublished).

      A.    *Rodriquez* "squarely rejected" the notion that "a defendant's record of prior convictions has no bearing on the seriousness of an offense." *Rodriquez*, 553 U.S. at 385. Thus, while this Court has held that identifying the maximum punishment for a "crime" entails examining the defendant's "conduct" and ignoring his "individual" characteristics, *Harp*, 406 F.3d 246 (quoting *Jones*, 195 F.3d at 207), *Rodriquez* held that the maximum punishment for a crime entails identifying any "applicable recidivist provision" triggered by the defendant's *individualized* criminal history. *Rodriquez*, 553 U.S. at 393.

      *Rodriquez* rules out the possibility that the phrase "applicable recidivist provision" means the recidivist provision applicable to a "defendant with the worst possible criminal record." See U.S. Br. 10. Instead of imagining a *hypothetical* worst possible offender, *Rodriquez* ascertained the maximum imprisonment for Rodriquez's state offense by looking to the provisions applicable to Rodriquez himself. The Court concluded that the maximum term of imprisonment for "at

least two" of Rodriquez's three state offenses, for purposes of 18 U.S.C. § 924(e), was 10 years' imprisonment. 553 U.S. at 383. It reasoned that, due to his criminal history, Rodriquez actually "faced" a 10-year maximum on the two repeat offenses. *Id.* And the government does not deny that in *Rodriquez*, the "maximum term" depended on the defendant's own criminal history. To the contrary, it concedes that under Washington law, a different maximum sentence applied to Rodriquez's latter two violations of the same statute based on his criminal history. U.S. Br. 10 (citing *Rodriquez*, 553 U.S. at 383).

The statutory provisions applicable to Ghazal, however, made the statutory maximum sentence for his crime, at most, 10 months' imprisonment.[1]  See N.C. Gen. Stat. § 15A-1340.17(c), (d); JA 209. Because Ghazal never faced more than a year's imprisonment, *Rodriquez* requires reversal of the district court's determination that Ghazal was a prohibited person at the time of his offense.

What is more, *Rodriquez* would require reversal even if this Court's distinction between the "crime" and the "individual" defendant were valid.

---

[1]  In *United States v. Peebles*, this Court recently stated that the statutory maximum sentence applicable to a defendant for a North Carolina offense was the top of the presumptive sentencing range when no aggravating factors were proved beyond a reasonable doubt.  2010 WL 1006721 at *5. No aggravating factors applied to Ghazal, which meant he could be sentenced to no more than 8 months' imprisonment.  JA 80, Op. Br. 8.  But because the maximum applicable to the aggravated range of imprisonment is also less than one year, the Court does not need to address this issue in order to decide this case.

*Rodriquez* explained that, "[i]f respondent were correct that a defendant's record of prior convictions has no bearing on the seriousness of an offense, then it would follow that *any increased punishment* imposed under a recidivist provision would *not be based on the offense* of conviction." 128 S. Ct. at 1789 (emphasis added). That statement demonstrates that *Harp* and *Jones* did not take the crime/criminal distinction to its logical conclusion. If a defendant's criminal history is not part of his "crime," as *Harp* and *Jones* assumed, then—contrary to the holdings of those cases—the increased sentencing exposure of someone with the *highest* prior record level "would not be based on the offense of conviction." *Ibid.* Instead, that defendant's overall exposure would represent exposure based on his conduct and *additional* exposure based on his criminal history. Under the logic of this Court's crime/criminal distinction, isolating the punishment attributable only to the "crime" would require considering the maximum punishment for someone with the *lowest*—not the highest—prior record level.

Ghazal is such a defendant. The sentencing exposure for his state crime was at most 10 months because he had the lowest prior record level. Ghazal therefore prevails under both the Supreme Court's holding in *Rodriquez* and the (now-defunct) crime/criminal distinction of *Harp* and *Jones*. Either way, Ghazal's state crime was not punishable by 15 months' imprisonment.

5

B.    It is true, as the government notes, that this Court's unpublished cases state that *Harp* and *Jones* survived *Rodriquez*. See U.S. Br. 10-11.  However, none of these opinions evaluate North Carolina's sentencing laws under *Rodriquez*'s reasoning.  *See United States v. Brandon*, No. 09-4639, 2010 WL 1734973 (4th Cir. 2010) (refusing to consider argument based on panel's inability to overrule *Harp*); *United States v. Blackwood*, No. 09-4762, 2010 WL 707682 (4th Cir. 2010) (*Anders* brief conceded that issue was foreclosed by *Harp*); *United States v. Summers*, 361 F. App'x 539 (4th Cir. 2010) (Court summarily rejected argument without considering whether North Carolina's sentencing law is a guideline scheme under *Rodriquez*), *petition for certiorari filed* (U.S. Apr. 20, 2010) (No. 09-10329); *United States v. Watson*, 336 F. App'x 363 (4th Cir. 2009) (same), *petition for certiorari filed* (U.S. Dec. 8, 2009) (No. 09-8003); *United States v. Simmons*, 340 F. App'x 141, 144 (4th Cir. 2009) (same), *petition for certiorari filed*, 78 U.S.L.W. 3368 (Nov. 25, 2009) (No. 09-676); *United States v. Terrance Williams*, 353 F. App'x 839, 841 (4th Cir. 2009) (refusing to consider argument based on panel's inability to overrule precedent of *Harp*), *petition for certiorari filed* (Feb. 22, 2010) (No. 09-9351); *United States v. Taste*, 303 F. App'x 149 (4th Cir. 2008) (Court did not consider *Rodriquez*); *United States v. Taylor*, 301 F. App'x 248 (4th Cir. 2008) (same); *United States v. Polk*, 281 Fed. Appx. 195 (4th

6

Cir.) (same), *cert. denied*, 129 S. Ct. 476 (2008); *United States v. Lemons*, (4th Cir.) (same), *cert. denied*, 129 S. Ct. 238 (2008).[2]

But unpublished decisions are not binding precedent, and the Supreme Court's recent decision in *Johnson*—which is binding precedent—confirms Ghazal's view. In *Johnson*, as in *Rodriquez*, the Supreme Court assessed the implications of a defendant's prior state crime by asking which recidivist provision applied to the defendant himself, as opposed to asking which recidivist provision would have applied to a hypothetical defendant with the worst possible criminal history. 130 S. Ct. at 1269. *Johnson* held that the defendant's Florida conviction for simple battery was not a violent felony, and thus did not qualify as a predicate offense under the Armed Career Criminal Act ("ACCA"), because it did not entail proof of violent force. *Id.* at 1270-71.

The Court reached that question, however, only because it concluded that Johnson's Florida conviction for simple battery was a felony, *i.e.*, a "crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 924(e)(2)(B). The relevant Florida statute exposed first-time offenders to

---

[2] While the Supreme Court has denied petitions for certiorari in previous cases raising this issue, its recent actions on the *Watson*, *Simmons*, and *Williams* petitions indicate that it may be considering weighing in on this issue. *Watson* was initially distributed for the Supreme Court's conference of May 13, 2010, but the Court did not ruled on it, instead rescheduling it for conference on June 17, 2010, when *Simmons* and *Williams* are also scheduled for conference for a second time.

misdemeanor punishment but authorized felony punishment for defendants with prior battery convictions. Fla. Stat. § 784.03(1)(b). Under this Court's rule, the crime of battery under Florida law would be a felony for *all defendants* because it is a felony for "a defendant with the worst possible criminal history." *Harp*, 406 F.3d at 246.

But the Supreme Court did not conclude that simple battery is a felony for all Florida defendants. Instead, the Court explained that simple battery under Florida law "ordinarily is a first-degree misdemeanor, but is a third-degree felony for a defendant who (like Johnson) has been convicted of battery (even simple battery) before." *Johnson*, 130 S. Ct. at 1269 (citation omitted). Thus, the Supreme Court indicated that Johnson's prior battery was a felony because it exposed Johnson *himself* to felony punishment.

By that same logic, a violation of North Carolina's controlled substance statute is a not a felony for every defendant; it is a felony for a defendant who—*unlike* Ghazal—faced a maximum sentence longer than one year. To the extent that *Harp* and *Jones* require a contrary conclusion, they now conflict with both *Rodriquez* and *Johnson*.

C.     *Harp* and *Jones* also conflict with this Court's 2003 decision in *Williams*, which considered whether the defendant's New Jersey drug convictions were for "serious drug offenses" under the ACCA. That issue turned on whether

8

the defendant's drug offenses subjected him to a "maximum term of imprisonment of ten years or more." 18 U.S.C. § 924(e)(2)(A); *see Williams*, 326 F.3d at 538. There, the relevant New Jersey statutes exposed a defendant with the worst possible criminal history to 10 years' imprisonment. *Id.* at 538-39. Moreover, Williams's actual criminal history qualified him for a 10-year maximum sentence. *Id.* at 539.

This Court nevertheless held that Williams's offenses were *not* serious drug offenses. The Court explained that Williams was not actually "subject to the enhanced sentence" because the state prosecutor and trial court had not exercised certain procedural safeguards necessary to expose Williams to the 10-year maximum. *Williams*, 326 F.3d 539. "The fact that Williams *could have*" been exposed to a 10-year sentence, the Court reasoned, "[did] not mean Williams's conviction was for an offense 'for which a maximum term of imprisonment of ten years or more is prescribed by law.'" *Williams*, 326 F.3d at 539. Because the 10-year maximum sentence had never been invoked, this Court concluded that characterizing Williams's New Jersey offenses as serious drug offenses "would compromise not only Williams's statutory rights, but his due process rights as well." *Id.* at 540.

Consistent with *Williams*, this Court recently stated in *United States v. Peebles* that, for purposes of the Assimilative Crimes Act, the "maximum sentence

9

under North Carolina law" was the "highest sentence Peebles could have received under North Carolina law."  2010 WL 1006721 at *1-*2.  Despite the government's contention that the "statutory maximum sentence should be the highest sentence that could ever be imposed for the offense," this Court concluded that the statutory maximum applicable to Peebles was only eight months "unless the government had established the elements necessary for the aggravated range or Peebles' record level had been greater."  *Id.* at *3; *see also United States v. McManus*, 236 F. App'x 855, 856 (2007) (maximum sentence under North Carolina law was 10 months, because "a North Carolina sentencing court would have *no discretion* to sentence a defendant with McManus's criminal history score to anything above the aggravated maximum sentence of 10 months").

By looking to the maximum punishment Williams and Peebles actually faced for their state crimes, *Williams* and *Peebles* did exactly what the government claims this Court cannot do here. Furthermore, Williams's argument was far weaker than Ghazal's. Whereas Williams "*could have*" faced enhanced punishment because of his criminal history, 326 F.3d at 539, Ghazal could not possibly have faced more than 10 months' imprisonment, even if the government had proved aggravating factors. Therefore, subjecting Ghazal to enhanced punishment as a "prohibited person" under U.S.S.G. § 2K2.1(a)(4)(B), based on a

legal fiction that his North Carolina crime was punishable by more than a year in prison, violates his statutory and due process rights under *Williams*. *Id.* at 540.

## II.    The Government Misinterprets North Carolina Law

In addition to misinterpreting Supreme Court precedent, the government misinterprets North Carolina law. It asserts that all North Carolina Class I felonies have "*a* statutory maximum" of 15 months' imprisonment. U.S. Br. 13 (emphasis added). In fact, each Class I felony triggers one of many possible statutory maxima. The defendant's prior record level determines *which* maximum sentence applies to his crime. The Sixth Circuit explained that dynamic in *United States v. Pruitt*, 545 F.3d 416, 423 (6th Cir. 2008). Aside from *Peebles* and *McManus*, however, this Court's recent unpublished cases have overlooked it.

A.    The government's claim that North Carolina law provides "a" statutory maximum of 15 months for a Class I felony is meritless. North Carolina law does not specify a single maximum sentence for Class I felonies, including Ghazal's. *See*, *e.g.*, N.C. Gen. Stat. § 90-95(a)(3) (defining unlawful possession of a controlled substance). Instead, North Carolina provides *a list* of maximum sentences for Class I felonies ranging from four months to 15 months. N.C. Gen. Stat. § 15A-1340.17(c) & (d). Identifying the maximum sentence for each crime requires identifying the defendant's offense class and prior record level. *See* N.C. Gen. Stat. § 15A-1340.17(c). Although it is impossible to identify the maximum

11

authorized punishment without accounting for the defendant's prior record level, it is possible to identify "[t]he authorized punishment for each class of offense and prior record level." *Id.* Thus, the Sixth Circuit has correctly concluded that "[t]he structure of the North Carolina scheme effectively tailors the statutory maximum punishment available to each defendant." *Pruitt*, 545 F.3d at 420.

*Pruitt* dispels this Court's concern that the alternative to the rule of *Harp* and *Jones* is a rule that would make "all criminals sentenced under Structured Sentencing in North Carolina . . . exempt from section 922(g)(1)." *Jones*, 195 F.3d at 207. Under *Pruitt*, a defendant sentenced under Structured Sentencing in North Carolina would be subject to § 922(g)(1) if he could have faced more than one year of imprisonment for his state crime. Ghazal, however, is not such a defendant.

To be sure, the government accuses *Pruitt* of "misapprehen[ding] . . . North Carolina state law." U.S. Br. 12. But, at every step of the way, *Pruitt* is accurate:

> In *Rodriquez*, the Court made clear that two of the defendant's prior Washington convictions carried a maximum sentence of ten years because the defendant himself was subject to the recidivism enhancement. [128 S. Ct. at 1787.] In Pruitt's case, the relevant substantive criminal statute does not itself prescribe a maximum punishment. [N.C. Gen. Stat. § 90-95.] Instead, the maximum punishment is derived under the North Carolina structured scheme. [N.C. Gen. Stat. § 15A-1340.17(c), (d).] Under that scheme, Pruitt's state prior record level dictates his sentencing exposure and, consequently, it must be considered in determining whether Pruitt's convictions were "punishable" for a term exceeding one year. [*Id.*]

*Pruitt*, 545 F.3d at 423 (citations added).

12

The relevant misapprehension here does not reside in *Pruitt*. It resides in the government's claim that North Carolina law provides "a" statutory maximum for all Class I offenses. That claim does not accurately describe North Carolina's scheme of statutory maxima; instead, it restates the gloss that *Harp* and *Jones* placed on that scheme. Under *Rodriquez*, *Johnson*, and *Williams*, that gloss is erroneous.[3]

B.     Whereas *Pruitt* carefully describes North Carolina law, this Court's unpublished cases since *Rodriquez* do not. For example, some of those decisions rely on *Rodriquez*'s statement that "the phrase 'maximum term of imprisonment prescribed by law' for the 'offense' was not meant to apply to the top sentence in a guidelines range," without considering whether North Carolina's sentence scheme is a guidelines scheme at all. 128 S. Ct. at 1792; *see Watson*, 336 F. App'x at 364; *Summers*, 361 F. App'x at 541 (Court summarily rejected argument without

---

[3]     The government also criticizes *Pruitt* for citing *United States v. Norris*, 319 F.3d 1278 (10th Cir. 2003). *See* U.S. Br. 13. But *United States v. Hill*, the case cited by the government as overruling *Norris*, addressed a prior conviction under Kansas law, which allows for upward departures above the top of a sentencing guidelines grid. 539 F.3d 1213, 1218 (10th Cir. 2008); *see also* K.S.A. § 21-4704(d) ("The sentencing guidelines grid . . . define[s] presumptive punishments for felony convictions, subject to judicial discretion to deviate for substantial and compelling reasons and impose a different sentence in recognition of aggravating and mitigating factors as provided in this act.")  *Hill* is inapplicable to North Carolina's structured sentencing statute, which is not a guidelines system.

considering whether North Carolina's sentencing law is a guideline scheme under

*Rodriquez*);  *Simmons*, 340 F. App'x at 144 (same).

*Rodriquez*'s statements about guidelines ranges are irrelevant to North

Carolina's scheme of *statutory* maxima.  The government does not contend that

North Carolina's sentencing laws create a guidelines sentencing system as

referenced in *Rodriquez*, and such an argument would be incorrect.  Nor does the

government explain how North Carolina's recidivist sentencing provisions can be

distinguished in any meaningful way from those at issue in *Rodriquez*.  This case

is not about the top sentence in a guidelines range; it is about whether this Court

will recognize the statutory maximum sentence "applicable" to Ghazal. *See*

*Rodriquez*,  553 U.S. at 393.

## **CONCLUSION**

For the reasons stated in this brief and in Ghazal's Opening Brief, this Court

should vacate Ghazal's sentence and should remand his case to the district court

for re-sentencing without an enhancement for being a "prohibited person" at the

time of the offense.  Ghazal respectfully submits that a published decision

addressing this issue and resolving the inconsistencies among this Court's

unpublished decisions would be helpful to district courts and practitioners in this

Circuit.

This, the 17th day of June, 2010.

Claire J. Rauscher, Executive Director
Federal Defenders of
Western North Carolina, Inc.

/s Ann L. Hester
*Ann L. Hester
Rahwa Gebre-Egziabher
Assistant Federal Defenders
227 W. 4th Street, Suite 300
Charlotte, NC 28202
(704) 374-0720
Counsel for Appellant
*Counsel of Record

15

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [ X ] this brief contains *3,371* words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using *Corel WordPerfect 12* in *14pt Times New Roman*

Dated: June 17, 2010               /s Ann L. Hester
                                   *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 17th day of June, 2010, I caused this

Reply Brief of Appellant to be filed electronically with the Clerk of the

Court using the CM/ECF System, which will send notice of such filing to

the following registered CM/ECF users:

> Amy E. Ray
> OFFICE OF THE U.S. ATTORNEY
> 100 Otis Street, Room 233
> Asheville, North Carolina  28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that on this 17th day of June, 2010, I caused the

required number of bound copies of this Reply Brief of Appellant to be

hand-filed with the Clerk of this Court and one copy of the same to be

served, via UPS Ground Transportation, to counsel for Appellee at the above

listed address.

Dated: <u>June 17, 2010</u>                    <u>/s Ann L. Hester</u>
                                                          *Counsel for Appellant*